IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § § § | |
| v. | § § | **CRIMINAL NO. H-21-272-S** |
| **LEIDY ARELI HERNANDEZ LOPEZ** | § | |

## SUPERSEDING CRIMINAL INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

### COUNT ONE
(Conspiracy 18 U.S.C. § 371)

**INTRODUCTION**

At all times material to this Superseding Criminal Information:

1. The defendant **LEIDY ARELI HERNANDEZ LOPEZ**, ("**LOPEZ**") resided in the Southern District of Texas. **LOPEZ** had various co-conspirators, including co-conspirator AB, who resided in the Southern District of Texas, and co-conspirator OO, who resided in New York.

2. **LOPEZ** and her co-conspirators engaged in a scheme to use fictitious car dealerships to issue and sell hundreds of thousands of Texas temporary buyer tags ("buyer tags") without selling cars. **LOPEZ** and her co-conspirators used accounts such as Gmail and iMessage to communicate with each other and to deliver fraudulently obtained Texas buyer tags to purchasers all over the United States. The illegal tags pose a danger to the public and to law enforcement because

1

purchasers use them to avoid obtaining registration, safety inspections, and liability insurance, and can use them to hide their identity from law enforcement.

3. A Vehicle Identification Number (VIN) is the identifying code for a specific automobile. A VIN is like a fingerprint as no two vehicles in operation have the same VIN.

4. In Texas, used car dealers, whether they are individuals or business entities, must have an independent General Distinguishing Number (GDN) license to buy, sell, or exchange used vehicles.

5. To obtain a GDN license, applicants must access the Texas Department of Motor Vehicles' (TxDMV) online eLicensing application portal where they answer questions on an application, sign a certification that their answers are truthful, pay a fee, and provide proof of a surety bond (for buyer complaints only), office space, adequate signage, and identity. Acceptable identification includes a copy of a current state issued driver license (from any state), Texas identification card, United States passport, United States Armed Forces identification, or Texas concealed handgun license.

6. The TxDMV's online eLicensing platform for GDN applications is maintained on computer servers that are located outside the state of Texas.

7. Once an applicant obtains a GDN license, they can buy, sell, or exchange used cars and create temporary buyer tags for the transaction through the

TxDMV's online eTag portal that is known as "webDealer." The portal is web-based and is accessed by licensed GDN holders and is password protected. A temporary buyer tag, commonly referred to as a "paper plate" or "temporary tag," is only authorized when there is a vehicle sale and can only be created by a licensed GDN holder using their password to access the webDealer portal and manually enter the vehicle and buyer information, including the VIN. The dealer is responsible for ensuring that vehicles are inspected within 180 days of sale. During the period of the conspiracy, there were no restrictions on the vehicle, buyer, or VIN information that could be input into webDealer. The GDN holder can allow others access to webDealer by sharing their password or by creating additional users on their account.

8. Within 30 days of the active date of the GDN license (not when the dealer is open for business or starts selling vehicles), the GDN licensee is required to notify both the county tax office and appraisal district where the dealership is located that the licensee is a new dealer and to set up a tax account. Dealers are required to file a Motor Vehicle Inventory Tax Statement (VIT) at both the county tax office and appraisal district where the dealership is located. If no sales are made, the dealer must still file the form reporting zero sales.

9. L.C.S. Auto Sales was a fraudulent and fictitious used car dealer that had a GDN license. During the time L.C.S. Auto Sales held a GDN license from

approximately February 2020 until it was shut down by the TxDMV in July 2020, more than 18,000 Texas buyer tags were issued from its webDealer account. No VIT records were filed for L.C.S. Auto Sales.

## THE CONSPIRACY

10. From at least in or about April 2018 through in or about January 2021, in the Houston Division of the Southern District of Texas and elsewhere, the defendant,

**LEIDY ARELI HERNANDEZ LOPEZ**

did knowingly combine, conspire, confederate, and agree with others known and unknown, to commit the following offense against the United States:

> To devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing said scheme and artifice to defraud, transmit (or cause to be transmitted) by means of wire and radio communication in interstate commerce, a write, sign, signal, picture, and sound in violation of Title 18, United States Code, Section 1343.

## MANNER AND MEANS OF THE CONSPIRACY

11. Defendant **LOPEZ** , along with co-conspirators known and unknown, sought to accomplish the purpose of the conspiracy by the following manner and means, among other things:

    a. **LOPEZ** and her co-conspirators provided false information to the Texas Department of Motor Vehicles such as false identities and copies of fraudulent driver's licenses, fake lease agreements, photos of fake office space and

4

business signs, and other fraudulent documents via the Texas Department of Motor Vehicles' online eLicensing application portal in order to obtain GDN licenses for fictitious car dealerships;

      c.      **LOPEZ** and her co-conspirators advertised the sale of Texas buyer tags on social media platforms like Facebook and Instagram;

      d.      **LOPEZ** and her co-conspirators used email and iMessage to communicate with each other and to deliver fraudulently obtained Texas buyer tags;

      e.      **LOPEZ** and her co-conspirators received and shared fraud proceeds from the fraudulent sale of Texas buyer tags via electronic payment services like Cash App and Zelle, and sometimes by cash.

## **ACTS IN FURTHERANCE OF THE CONSPIRACY**

12.    To achieve the purpose of the conspiracy, **LOPEZ** and her co-conspirators, in the Southern District of Texas and elsewhere, committed and caused to be committed the following acts in furtherance of the conspiracy:

    (1)    On or about April 23, 2020, **LOPEZ** sent, or caused to be sent, an email to co-conspirator AB attaching a PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "5406." The seller was listed as L.C.S. Auto Sales and issued to a buyer whose initials are "JK" with a zip code in Queens, NY.

(2) On or about April 23, 2020, co-conspirator AB forwarded **LOPEZ**' email containing the PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "5406" to OO in New York.

(3) On or about April 23, 2020, OO received an email from Cash App advising that he had received a $175 payment from "JK" for "temporary plates for bmw 2010 528i for JXXXX." TxDMV records show that this buyer tag was issued via L.C.S. Auto Sales from the TxDMV eTag system. The car was never inspected in Texas.

(4) On or about May 2, 2020, **LOPEZ** sent, or caused to be sent, an email to co-conspirator AB attaching a PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in 6425. The seller was listed as L.C.S. Auto Sales issued to a buyer whose initials are "JG" with an address in Florida.

(5) On or about May 2, 2020, co-conspirator AB forwarded **LOPEZ**' email containing the PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "6425" to OO in New York.

(6) On or about May 2, 2020, OO received an email from Cash App advising that he had received a $175 payment from "JG" for "temp tag." TxDMV records show that this buyer tag was issued via L.C.S. Auto Sales from the TxDMV eTag system. The car was never inspected in Texas.

(7) On or about May 12, 2020, **LOPEZ** sent, or caused to be sent, an email to co-conspirator AB attaching a PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "1171" The seller was listed as L.C.S. Auto Sales issued to a buyer whose initials are "TB" with an address in New York.

(8) On or about May 12, 2020, co-conspirator AB forwarded **LOPEZ**' email containing the PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "1171" to OO in New York. TxDMV records confirm that this buyer tag was issued via L.C.S. Auto Sales from the TxDMV eTag system.

(9) On or about May 12, 2020, OO received an email from Cash App advising that he had received a $175 payment from "TB" for "Registration and Tags." The car was never inspected in Texas.

(10) On or about June 9, 2020, **LOPEZ** sent, or caused to be sent, an email to co-conspirator AB attaching a PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "7134" The seller was listed as L.C.S. Auto Sales issued to a buyer whose initials are "JA" with an address in Washington, D.C. TxDMV records confirm that this buyer tag was issued via L.C.S. Auto Sales from the TxDMV eTag system.

(11) On or about June 9, 2020, co-conspirator AB forwarded or caused to be forwarded **LOPEZ**' email containing the PDF of a Texas buyer's tag along with the buyer and dealer receipts for a vehicle with a VIN ending in "7134" to OO in New York.

(12) On or about June 9, 2020, OO received an email from Cash App advising that he had received a $150 payment from "JA" for "tag." The car was never inspected in Texas. L.C.S. Auto Sales never reported a car sale on a VIT.

In violation of Title 18, United States Code, Section 371.

## NOTICE OF CRIMINAL FORFEITURE
28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C)

Pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C), the United States gives notice to the defendant,

## LEIDY ARELI HERNANDEZ LOPEZ

that in the event of conviction of the offense charged in Count 1 of this Superseding Criminal Information, the United States intends to seek forfeiture of all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses.

## Money Judgment and Substitute Assets

The United States will seek the imposition of a money judgment against each defendant. In the event that a condition listed in Title 21, United States Code,

Section 853(p) exists, the United States may seek to forfeit any other property of the defendants in substitution.

ALAMDAR S. HAMDANI  
United States Attorney

By: *Belinda Beek*  
Belinda Beek  
Assistant United States Attorney